UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Arlo Garrison Bante,**<br>5000 Dartmouth Drive<br>Fairbanks, Alaska 99709<br>arlo.g.bante@gmail.com<br>(907) 799-6645<br><br>*Plaintiff,*<br><br>v.<br><br>**Lonnie G. Bunch, III, Secretary,**<br>**Smithsonian Institute,**<br>600 Maryland Ave., SW<br>Washington, D.C.  20002<br><br>*Defendant.* | CIVIL ACTION NO.:   1:23-cv-03937-APM<br><br>DEMAND FOR JURY TRAIL |

## COMPLAINT

Plaintiff Arlo Garrison Bante ("Mr. Bante" or "Plaintiff") brings this action against Defendant Lonnie G. Bunch, III ("Mr. Bunch" or "Defendant") in his official capacity as Secretary of the Smithsonian, to redress violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e et seq., as amended, Title 5 of the U.S.C and 29 CFR § 785.37 of the Fair Labor Standards Act (FLSA).

### JURISDICTION AND VENUE

1. Federal question subject matter jurisdiction is proper pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; and 42 U.S.C. § 1988.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. The acts and omissions alleged herein occurred within this judicial district.

3. Mr. Bante has exhausted all his administrative remedies.


**RECEIVED**

JAN 22 2024                    Page 1 of 16

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## PARTIES

4.  The Plaintiff, Mr. Arlo Bante, is disabled (Aspergers, Attention Deficit Hyperactivity Disorder ("ADHD"), and Dyslexia) Alaskan Native, who resides at 5000 Dartmouth Drive, Fairbanks, Alaska 99709. Defendant employed Mr. Bante from March 28, 2022, to June 3, 2022.

5.  Defendant, Mr. Lonnie G. Bunch III, is the Secretary of the Smithsonian Institution ("Smithsonian"), an independent federal trust instrumentality of the United States and an "employer" within the meaning of the statutes under which Plaintiff brings his claims.

## STATEMENT OF FACTS

6.  On March 28, 2022, Mr. Arlo Bante was hired by the Smithsonian Institution's Office of Facilities Management and Reliability to serve as a Pipefitter, WG-4202-10. Mr. Bante's job duties included responding to any plumbing and pipe work that was required by the Smithsonian.

7.  Mr. Bante possesses an extensive Fifteen (15) years of plumbing experience, a degree in Mechanical Engineering, and was the only pipefitter in Mr. Harting's chain-of-command.

8.  Mr. Bante's first line supervisor was Joseph Harting, General Maintenance Supervisor; Mr. Bante's second line supervisor was Anthony Watts, Assistant Facility Operations Manager; and Mr. Bante's third line supervisor was Conover Black, former Associate Director/Division Chief of the Central Maintenance Division ("CMD"), Facilities Operations. Ms. Wyletha Jackson, Administrative Officer Smithsonian Facilities (SF), Office of Facilities Management & Reliability (OFMR) Central Maintenance Division (CMD).

9.  Mr. Bante would often talk to colleagues about being from Alaska and his heritage as an Alaskan Native as he found it to be an easy way to start a conversation and bond with co-workers. He noticed people often had questions about what living in Alaska is like. Thus, his race was widely known. In addition, Mr. Bante included his race on demographics section of his employment application.

10. Since Mr. Harting office wasn't located within the same building that Mr. Bante report to work, he delegated distribution of overtime opportunities to Mr. Bante's co-worker, Mr. Jorge Chavez (Hispanic, no disability).

11. Between March 28, 2022, and May 23, 2022, Mr. Bante was not provided the same overtime opportunities as his co-workers. Hispanic workers were offered the significantly more overtime opportunities, as well as more desirable overtime opportunities.

12. During Mr. Bante employment he made the following co-workers aware of his learning disability: Mr. Jorge Chavez, Mr. David Ortiz, Mr. Mike Stevenson, Mr. Ayzinah Haile, Mr. Reginald Jones and Mr. Tomas Rodriguez.

13. On April 25, 2022, Mr. Harting sent an email to employees, including Mr. Bante, stating that being considered "AWOL" [absent without leave] by him will lead to termination. There was no contemporaneous explanation as to what prompted this email, considering that Mr. Harting also wrote, "This is not a new policy."

14. The defendant's agency later claimed during proceedings before the Equal Employment Opportunity Commission ("EEOC") that this email was sent because they believed Mr. Bante left work early on April 25, 2022. However, Mr. Bante did not leave work early on April 25, 2022, or on any other date, and Mr. Harting later shifted his testimony to indicate that Mr. Bante had left early on April 26, 2022 and not April 25, 2022.

15. On May 2, 2022, Mr. Bante was subjected to verbal intimidation and coercion from Mr. Watts and Mr. Harting based on allegations that he had departed work 45 minutes early on an unspecified date. During the meeting Mr. Harting stood behind Mr. Bante blocking the office door in a threatening position. Mr. Bante informed them that he had never left work early and asked them to identify what date he was alleged to have left work early. Neither Mr. Harting nor Mr. Watts would identify the alleged date when asked.

16. Mr. Harting left the meeting and returned moments later to claim that he spoke to three witnesses who said Mr. Bante left work early on the undisclosed date, but he again declined to identify the date or the alleged witnesses. Mr. Watts threatened to review

security camera footage, but Mr. Bante indicated that he would welcome a review of the footage because it would prove that his denials were the truth. Additionally, Mr. Harting nor Mr. Watts never stated that they witnessed Mr. Bante leaving early since both rarely reported for work at CMD shop located at the National Museum of Natural History.

17. Immediately after this meeting, on May 2, 2022, Without Mr. Bante knowledge, Mr. Harting reached out to Paula Hatch, Smithsonian's Office of Human Resources, Labor Employee Relations Representative (HR-LER), to express his intention to charge Mr. Bante with being absent without leave and follow up with a reprimand letter.

18. Ms. Hatch responded on May 2, 2022 that a reprimand letter was not the best response to a first instance of discipline, and she instead offered to draft a counseling letter that Mr. Bante never received.

19. Mr. Harting immediately replied and indicated that he did not believe Mr. Bante would work out at the Smithsonian, despite that Mr. Bante had been employed with Smithsonian for only 26 business days and had never previously been reprimanded or disciplined in any way.

20. In contrast, Mr. Bante has witnessed Mr. Chavez was often unreachable by co-workers and management during work hours, and never held accountable, reprimanded, or issued any other disciplinary action as a result.

21. In or around May 2022, Mr. Bante approached Mr. Harting to express his interest in participating in a work order at the National Museum of the American Indian ("NMAI"). This plumbing project fell within Mr. Bante's area of expertise, being the only pipefitter in Mr. Harting's chain-of-command. Mr. Bante was deeply interested in supporting this project as the only Alaskan Native working for the Smithsonian, as the museum held cultural significance for him. When Mr. Harting inquired as to why Mr. Bante was interested in the NMAI project, Mr. Bante stated that he is an Alaskan Native.

22. Later in May 2022, Mr. Harting and Mr. Bante were at the National Museum of Natural History when Mr. Harting pointed to some large aluminum boxes stored in a hallway and

stated, "Here is where we store the Indians at the Smithsonian." Mr. Bante became shocked and intimidated by this comment as it came after Mr. Bante shared his cultural identity with Mr. Harting.

23. On May 7, 2022, Mr. Bante attended a weekend-long Smithsonian approved back flow recertification training ("back flow training"). Each day of the training, Mr. Bante commuted 140 miles using his personal vehicle to attend the back flow training. During the training, Mr. Bante noticed other students were allowed to leave and since all hands-on training equipment was occupied he tried to study the course material. Mr. Bante approached the trainer, Mr. Marc Wingerd, and politely asked if he could also be excused from the facility to study the comprehensive 202-page textbook for the written exam that was being administered the following day. During this conversation, Mr. Bante informed Mr. Wingerd of his learning disabilities and the necessity of studying in a quiet environment.

24. Mr. Wingerd summarily dismissed Mr. Bante's request for an accommodation for his disabilities and stated that he would prefer that Mr. Bante stay for the hands-on portion of the training. However, at no point did Mr. Wingerd state that Mr. Bante was required to stay for the hands-on portion, so Mr. Bante reasonably believed that Mr. Wingerd's request was a preference and departed from the facility at 2:30PM and drove the 70 miles home to study in a quiet place.

25. On May 8, 2022, Mr. Bante got to the training facility early and continued to study in his car as the facility did not provide a quiet place to study.

26. On May 9, 2022, Mr. Bante shared with his colleagues that he had successfully completed the back flow training.

27. Also on May 9, 2022, Mr. Bante told Mr. Harting about his conversation with Mr. Wingerd on May 7, 2022. Specifically, he relayed how he had asked Mr. Wingerd during the back flow training for approval to study the textbook in a quiet place because he has learning disabilities that make it difficult for him to learn outside of a quiet environment, but that

Mr. Wingerd had denied his request. At this time, all hands-on training equipment was in use and Mr. Bante had no other options than to study the textbook associated with the training. Notably, Mr. Wingerd never stated that Mr. Bante's presence was mandatory and simply suggested that he stay for additional time with the hands-on training equipment.

28.  On May 10, 2022, Instead of reporting Mr. Bante harassment to the Smithsonian EEO office, Mr. Harting emailed Ms. Shelly Fishpaw, owner of the training facility, to inquire about Mr. Bante's training incident stating, "If you don't mind can you send me what happened, we have had some issues with this employee, and I would like to know if he caused you issues."

29.  Without Mr. Bante knowledge, Mr. Harting speaks with Mr. Wingerd on May 10, 2022, regarding the May 7, 2022, exchange between Mr. Wingerd and Mr. Bante. After this call, Mr. Harting sent Ms. Hatch an email summarizing his conversation with Mr. Wingerd. In this summary, Mr. Harting wrote that Mr. Bante requested to have time to study, and Mr. Wingerd replied that he should not leave and "preferred that" Mr. Bante stay to practice the hands-on portion of the training. In the same email, Mr. Harting again told Ms. Hatch that he did not believe Mr. Bante was a good fit for the Smithsonian, despite that Mr. Wingerd had corroborated Mr. Bante's description of the incident and the denial of his request to be accommodated because of his disability.

30.  Within two weeks of Mr. Bante informing Mr. Harting and Mr. Watts that he is an Alaskan Native, Mr. Harting had twice told Ms. Hatch that Mr. Bante should be terminated, despite there being no justification for removing him.

31.  On or around May 12, 2022, Mr. Harting informed Mr. Watts of Mr. Bante's May 9, 2022, complaint about the denial of his request for accommodation for his disabilities.

32.  On May 13, 2022, After Mr. Bante submitted gas receipts for the training for reimbursement, Mr. Watts proceeded to reprimanded Mr. Bante in an angry tone of voice, falsely accusing him of having thrown things, flipped tables, and yelled at Mr. Wingerd on May 7, 2022. This was the first time Mr. Bante was notified of these allegations, and Mr.

Bante told Mr. Watts that he had not engaged in any of the described behavior, but explained how he had requested to study in a quiet place because of his learning disabilities, including Aspergers and ADHD. Mr. Watts appeared to become even more angry and began to scream at Mr. Bante, berating, speaking over, and ignoring Mr. Bante's requests for information as to the source of these accusations. Finally, at the close of this meeting, Mr. Watts stated that he would speak with Mr. Harting, as he was who Mr. Bante originally reported this too, and follow up with Mr. Bante regarding the alleged behavior on May 16, 2022.

33. Mr. Bante's co-worker, Tomas Rodriquez, saw Mr. Bante immediately after this meeting and instantly recognized how upset Mr. Bante was, having been reduced to tears during his meeting with Mr. Watts. Mr. Rodriquez, who was aware of Mr. Bante's disabilities, assisted in calming Mr. Bante.

34. On May 16, 2022, neither Mr. Watts nor Mr. Harting came to work, despite Mr. Watts' promise to meet with Mr. Bante on May 16, 2022. Mr. Bante tried calling and emailing Mr. Harting to follow up because he was in distress about the false allegations, but they did not answer or return his calls or emails.

35. On May 17, 2022, Mr. Harting and Mr. Watts emailed Ms Hatch asserting that Mr. Bante not only did Mr. Bante disrupting the training he has also falsified his overtime on his timesheet for attending the back flow training. The email included a photo of Mr. Bante leaving the training at 2:30pm, provided by Ms. Fishpaw ring camera. The email deliberately omitting to communicate the additional time spent driving the 140 miles to and from the training facility since Mr. Bante supervisors were the ones that approved Mr. Bante back flow training.

36. On May 18, 2022, Mr. Bante reached out to Mr. Black, Mr. Bante's third-line supervisor, regarding Mr. Watts' and Mr. Harting's despairing treatment of him. Specifically, Mr. Bante explained to Mr. Black that he had requested reasonable accommodation due to his disabilities during the back flow training, which was denied and had explained the same

way to Mr. Harting and Mr. Watts. He further recounted how Mr. Watts screamed at him based on fabricated allegations that Mr. Bante had an angry outburst on May 7, 2022 during the training. Mr. Black ended the meeting, informing Mr. Bante that he would speak to Mr. Harting and Mr. Watts to address the issue.

37. Also on May 18, 2022, Mr. Bante printed out his timesheet for the dates in question, which was certified and validated by Mr. Harting and Ms. Wyletha Jackson, Administrative Officer for CMD, on May 10, 2022. Mr. Bante's timesheet did not indicate under "supervisor remarks" that he would be marked as AWOL as previously instructed by Ms. Hatch, and he was paid accordingly.

38. Later on May 18, 2022, Without Mr. Bante Knowledge, Mr. Harting emailed Ms. Jackson to request that Mr. Bante's timesheet be reopened so that he could retroactively his time on April 26, 2022 by thirty (30) minutes and to remove paid time associated with Mr. Bante training. This was the first time that Mr. Harting raised any concerns about Mr. Bante's whereabouts on April 26, 2022, rather than April 25, 2022. Mr. Harting shifted his allegation that Mr. Bante was AWOL to April 26, 2022, after he discovered an overtime sign-up sheet signed by Mr. Bante that confirmed he did not leave early on April 25, 2022. However, Ms. Harting had previously claimed that he wrote the April 25, 2022, email in response to Mr. Bante leaving early, which could not be true if the date on which Mr. Bante was allegedly AWOL was April 26, 2022.

39. On May 19, 2022, Mr. Harting called a department meeting. Mr. Bante's co-worker, Mr. Mike Stevenson, told Mr. Bante that this was the first department meeting ever held within CMD. In this meeting, Mr. Harting stare at Mr. Bante and stated that the workplace is not a democracy, but rather a dictatorship and that Mr. Bante needed to "follow the chain of command." During this meeting, Mr. Bante's co-workers raised concerns about overtime not being allocated correctly and how Mr. Chavez controlled the overtime opportunities. Following this, Mr. Chavez became angry and charged at some of his co-workers, while Mr. Harting took no action.

40. Mr. Bante believed that this meeting and intimidating comments were a direct response to Mr. Bante's complaints to Mr. Black the day before.

41. On May 23, 2022, Mr. Harting emailed Mr. Bante to reject his earlier request to participate in the plumbing work order at National Museum of American Indian (NMAI) project and state that he prefers Mr. Bante not be involved. Notably, Mr. Harting offered no business-related explanation referring to Mr. Bante's skills or experience when rejecting his request.

42. On May 24, 2022, Mr. Harting escorted Mr. Bante to Mr. Black's office. Mr. Bante believed that this meeting was to address his complaints to Mr. Black of disability discrimination and reprisal. With no Smithsonian human resource representative present, Mr. Black and Mr. Harting informed Mr. Bante that his employment was being terminated and presented him with termination paperwork to sign. As soon as Mr. Bante realized how inappropriate this meeting was, he used his phone to record the conversation. Mr. Bante again explained that his learning disability (ADHD and Dyslexia) impacted his reading comprehension, and he would need additional time to read the documentation. Mr. Black and Mr. Harting denied his request and offered to read the documents to Mr. Bante. This was not an effective accommodation, as he required time to quietly review the documents before being required to sign. Infuriated by Mr. Bante request, Mr. Black proceeded to verbally and physically intimidate Mr. Bante into to sign the termination paperwork under duress, as Mr. Harting did nothing to interject. This is in contrary to Mr. Harting sworn testimony which states Mr. Black calmly addressed Mr. Bante's question. In addition, Mr. Bante did not trust Mr. Black and Mr. Harting to accurately relay the contents of the documents to him in light of their prior false statements and acts of discrimination and retaliation. Therefore, Mr. Bante requested a union representative to be present and assist him with reading the termination documents, but Mr. Black and Mr. Harting denied this request violating Mr. Bante Weingarten Rights.

43. During the termination meeting, Mr. Bante asked what he had done wrong and requested they clarify what was meant by "misconduct." Mr. Black replied that Mr. Bante knew what

he did wrong and compared Mr. Bante to his autistic child who he indicated often pretended to not know what he did wrong. Notably, Mr. Black expeditiously retired prior to furnishing his testimony.

44. Mr. Bante was not given the opportunity to read the documents relating to his termination and was subsequently escorted out of the building by Smithsonian Security.

45. On May 24, 2022, After Mr. Bante was terminated and without his knowledge, Smithsonian management intentionally and willfully finalized the fraudulent AWOL charge on his timesheet and the remove of time spent driving to the back flow training.

## COUNT I

### Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.

### DISABILITY DISCRIMINATION

46. Mr. Bante incorporates by reference paragraphs 6 through 48 above as if fully stated herein.

47. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., prohibits a federal agency or other employer receiving federal funding from discriminating against a qualified individual with a disability because of such employee's disability.

48. A hostile work environment is a form of prohibited employment discrimination where the employee is subjected to a work environment permeated with ridicule and humiliation that substantially alters the work environment.

49. At all pertinent times, Defendant was an employer subject to the provisions of the Rehabilitation Act.

50. At all pertinent times, Mr. Bante was an employee entitled to protection under the Rehabilitation Act, as he is a qualified individual with disabilities (Aspergers, ADHD, and Dyslexia).

51. At all pertinent times, Defendant was on notice of Mr. Bante's disabilities because Mr. Bante informed his supervisors of his disabilities on May 9, 2022.

52. In violation of the Rehabilitation Act, Defendant knowingly and intentionally subjected Mr. Bante to disparate treatment and a hostile work environment because of his disability when: his supervisors denied him the same overtime opportunities as his non-disabled counterparts;  Mr. Harting denied Mr. Bante's request to participate in the NMAI project; his supervisors denied his requests for reasonable accommodation on May 7, 2022 and May 24, 2022; Mr. Black mockingly compared Mr. Bante to a child during his termination meeting; Mr. Black, Mr. Watts, and Mr. Harting fabricated allegations of performance and conduct deficiencies to justify disciplining him; and his supervisors terminated him.

53. As an actual and prominent cause of Defendant's conduct, Mr. Bante has suffered damage to his professional reputation, his career at the Smithsonian, physical injury, emotional distress, embarrassment, humiliation, continuing mental health issues that also contributing to the dissolution of his marital union, loss of income, on going clinical depression resulted in the revocation of his professional journeymen plumbing license, the loss of benefits and the continuing anxiety of securing future employment.

54. Due to Defendant's intentional disregard of Mr. Bante's federally protected rights under the Rehabilitation Act, Mr. Bante seeks all damages available to him under the Act, including backpay with pre and post judgment interest, front pay, reimbursement of lost benefits, compensatory damages for emotional distress and damage to his professional reputation, and repayment of attorney's fees and costs.

## COUNT II

### Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.

### RETALIATION

55. Mr. Bante incorporates by reference paragraphs 6 through 57 above as if fully stated herein.

56. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., prohibits a federal agency or other employer receiving federal funding from retaliating against an employee because he has opposed any act or practice made unlawful by the Act.

57. A hostile work environment is a form of prohibited employment discrimination where the employee is subjected to a work environment permeated with ridicule and humiliation that substantially alters the work environment.

58. At all pertinent times, Defendant was an employer subject to the provisions of the Rehabilitation Act.

59. At all pertinent times, Mr. Bante was an employee entitled to protection under the Rehabilitation Act, as he is a qualified individual with disabilities (Aspergers, ADHD, and Dyslexia).

60. Mr. Bante opposed violations of the Rehabilitation Act when he informed Mr. Harting on May 9, 2022 that Mr. Wingerd had denied his request for accommodation for his disabilities; he notified Mr. Watts on May 13, 2022 that Mr. Wingerd had denied his request for reasonable accommodation; and he told Mr. Black on May 18, 2022 that Mr. Watts and Mr. Harting were discriminating against him because of his disability and request for reasonable accommodation.

61. In violation of the Rehabilitation Act, Defendant knowingly and intentionally subjected Mr. Bante to disparate treatment and a hostile work environment in retaliation for opposing violations of the Rehabilitation Act when: Mr. Harting and Mr. Watts reprimanded Mr. Bante and yelled at him for seeking reasonable accommodation; Mr. Harting denied Mr. Bante's request to participate in the NMAI project; Mr. Black, Mr. Watts, and Mr. Harting fabricated allegations of performance and conduct deficiencies to justify disciplining him, including one (1) day after Mr. Bante engaged in protected activity; and his supervisors terminated him.

62. Mr. Bante's protected activity and Defendant's adverse employment action were causally connected and not wholly unrelated.

63. As an actual and prominent cause of Defendant's conduct, Mr. Bante has suffered damage to his professional reputation, his career at the Smithsonian, physical injury, emotional distress, embarrassment, humiliation, continuing mental health issues that also

contributing to the dissolution of his marital union, loss of income, on going clinical depression resulted in the revocation of his professional journeymen plumbing license, the loss of benefits and the continuing anxiety of securing future employment.

64. Due to Defendant's intentional disregard of Mr. Bante's federally protected rights under the Rehabilitation Act, Mr. Bante seeks all damages available to him under the Act, including backpay with pre and post judgment interest, front pay, reimbursement of lost benefits, compensatory damages for emotional distress and damage to his professional reputation, and repayment of attorney's fees and costs.

## COUNT III

### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000(e)

### RACE DISCRIMINATION

65. Mr. Bante incorporates by reference paragraphs 6 through 67 above as if fully stated herein.

66. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.

67. A hostile work environment is a form of prohibited employment discrimination where the employee is subjected to a work environment permeated with ridicule and humiliation that substantially alters the work environment.

68. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

69. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

70. In violation of Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000e et seq., Defendant knowingly and intentionally subjected Mr. Bante to disparate treatment and a hostile work environment based on his race (Alaskan Native) when: his supervisors denied

him the same overtime opportunities as his Hispanic counterparts;  Mr. Harting denied Mr. Bante's request to participate in the NMAI project; Mr. Harting made intimidating and harassing comments to Mr. Bante, such as "Here is where we store the Indians at the Smithsonian" while pointing at the aluminum boxes stored in the halls of the National Museum of Natural History; Mr. Black, Mr. Watts, and Mr. Harting fabricated allegations of performance and conduct deficiencies to justify disciplining him; and his supervisors terminated him.

71.   As an actual and prominent cause of Defendant's conduct, Mr. Bante has suffered damage to his professional reputation, his career at the Smithsonian, physical injury, emotional distress, embarrassment, humiliation, continuing mental health issues that also contributing to the dissolution of his marital union, loss of income, on going clinical depression resulted in the revocation of his professional journeymen plumbing license, the loss of benefits and the continuing anxiety of securing future employment.

72.   Due to Defendant's intentional disregard of Mr. Bante's federally protected rights under the Rehabilitation Act, Mr. Bante seeks all damages available to him under the Act, including backpay with pre and post judgment interest, front pay, reimbursement of lost benefits, compensatory damages for emotional distress and damage to his professional reputation, and repayment of attorney's fees and costs.

**COUNT IIII**

**Violation of Title 5 of the U.S.C and 29 CFR § 785.37 of the Fair Labor Standards Act**

**Wrongful Termination**

73.   Mr. Bante incorporates by reference paragraphs 23 through 45 above as if fully stated herein.

74.   Under Title 5 of the U.S.C and 29 CFR § 785.37 of the Fair Labor Standards Act (FLSA) stated that when an employee who regularly works at a fixed location in one city is given an special assignment in another city and returns home the same, the time spent in traveling to and returning from the other city is deemed compensable work time.

75. Pretextual termination is a form of wrongful termination when the employer provides a false or misleading reason for termination an employee, while the actual motivation for the termination is based on discriminatory, retaliatory, or otherwise unlawful grounds.

76.  At all pertinent times, The defendant agency is subjected to Title 5 of the U.S.C and 29 CFR § 785.37 of the Fair Labor Standards Act.

77. At all pertinent times, Mr. Bante was a federal employee, employed at the Smithsonian Institution and entitled to the rights and protections under the Title 5 of the U.S.C and 29 CFR § 785.37 of the Fair Labor Standards Act.

78. At all pertinent time, Defendant was on notice of Mr. Bante job related, Smithsonian's approved training and the location of training facility.

79. In violation of the Title 5 of the U.S.C and 29 CFR § 785.37 of the Fair Labor Standards Act, The defendant willfully and intentionally used Mr. Bante workable hours of driving to and from the training facility as the reason to wrongfully terminate Mr. Bante's employment, this is a violation of Title 5 U.S.C. and the Fair Labor Standards Act. This is evident from Smithsonian management's affidavit statements and emails, which repeatedly emphasized that Mr. Bante had falsified his timesheet.

80. As an actual and prominent cause of Defendant's conduct, Mr. Bante has suffered damage to his professional reputation, his career at the Smithsonian, physical injury, emotional distress, embarrassment, humiliation, continuing mental health issues that also contributing to the dissolution of his marital union, loss of income, on going clinical depression resulted in the revocation of his professional journeymen plumbing license, the loss of benefits and the continuing anxiety of securing future employment.

81. Due to Defendant's intentional disregard of Mr. Bante's federally protected rights under the Title 5 of the U.S.C and 29 CFR § 785.37 of the Fair Labor Standards Act, Mr. Bante seeks all damages available to him under the Act, including backpay with pre and post judgment interest, front pay, reimbursement of lost benefits, compensatory damages for

emotional distress and damage to his professional reputation, and repayment of attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Arlo Bante, respectfully requests that this Honorable Court enter judgment in his favor on all Counts of his Complaint and against Defendant Lonnie G. Bunch III and he be awarded the following relief:

A.   Entry of judgment in favor of Mr. Bante on all Counts;

B.   Award of nominal, equitable, actual and compensatory damages for Plaintiff against Defendant including, but not limited to, backpay, front pay, and emotional distress damages and including enhanced damages for willful misconduct.

C.   Award of reasonable attorney's fees and litigation costs and expenses for Plaintiff against Defendant;

D.   Award of pre and post judgment interest for Plaintiff; and

E.   Any other relief that this Court deems equitable, appropriate, and just.

F.   Request the court to include job placement assistance, career counseling, financial support for retraining and job search expense.

G.   Smithsonian shall add policy that insures that a human resource and a union representative is present during any adverse employment action.

H.   The defendant shall move the Native American remains to private and secure location.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

Date: _____ 12/26/23 _____

Arlo Garrison Bante, pro se
5000 Dartmouth Drive
Fairbanks, Alaska 99709
arlo.g.bante@gmail.com
(907)799-6645

Page 16 of 16